992 F.2d 1216
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Michael P. JAMES, Petitioner-Appellant,
v.
Dewey SOWDERS, Respondent-Appellee.
 No. 92-5660.
 United States Court of Appeals, Sixth Circuit.
 April 5, 1993.
 
 Before MERRITT, Chief Judge, and BOGGS and BATCHELDER, Circuit Judges.
 PER CURIAM.
 
 
 1
 Michael P. James appeals the district court's dismissal of his petition for habeas corpus relief from his Kentucky convictions for first degree rape, second degree burglary, receiving stolen property, and being a persistent felony offender in the first degree. James contends that the Kentucky trial court's denial of a request for an admonition directing the jury not to draw any adverse inference from James's failure to testify was constitutional error.
 
 
 2
 Following his jury conviction, James was sentenced to twenty years' imprisonment for the rape conviction, ten years' imprisonment for the burglary conviction, and one year's imprisonment for the receiving stolen property conviction. Because he was found to be a first degree persistent felony offender, James's rape sentence was enhanced to life imprisonment.
 
 
 3
 The Kentucky Supreme Court affirmed James's conviction. James v. Kentucky, 647 S.W.2d 794 (Ky.1983). The United States Supreme Court, however, held that the trial court violated James's constitutional right against compulsory self-incrimination by denying his request for an admonition directing the jury not to draw any adverse inference from James's failure to testify. The Supreme Court remanded to the Kentucky Supreme Court to determine whether the violation was harmless error. James v. Kentucky, 466 U.S. 341 (1984). The Kentucky Supreme Court held the violation did constitute harmless error, and the United States Supreme Court denied James's petition for writ of certiorari. James v. Commonwealth of Kentucky, 679 S.W.2d 238 (Ky.1984), cert. denied, 470 U.S. 1086 (1985).
 
 
 4
 Now, James attempts to address the same issue by filing a petition for a writ of habeas corpus, under 28 U.S.C. § 2254. The district court dismissed James's petition with prejudice.
 
 
 5
 The harmless error rule applies to a state court's error in declining to give a "no adverse inference" instruction. United States v. Hasting, 461 U.S. 499 (1983); Finney v. Rothgerber, 751 F.2d 858 (6th Cir.), cert. denied, 471 U.S. 1020 (1985). Therefore, the question before this court is whether it is clear beyond a reasonable doubt that the trial court's refusal to give a "no adverse inference" instruction had no effect on the ultimate outcome of the trial. United States v. Hasting, 461 U.S. at 510-11.
 
 
 6
 James's defense at trial was that the victim, Donna Richardson, fabricated the entire story. The government's evidence consisted of Richardson's testimony and extrinsic evidence that corroborated her testimony.
 
 
 7
 Richardson testified that on April 23, 1982, she returned home to find that her apartment had been burglarized. A .22 caliber pistol that she kept underneath her bed pillow was missing. Richardson reported the serial number of the stolen pistol to the police and nailed her windows shut. James, her neighbor, noticed her nailing her windows shut and inquired about the incident.
 
 
 8
 On May 1, 1982, Richardson came home from work and discovered that the lower glass panel of her back storm door had been removed and a small window panel in the back door had been shattered. Although her bed pillows had been disturbed, nothing was missing. This incident was also reported to the police.
 
 
 9
 On May 6, 1982, according to Richardson's testimony, she was at home on lunch break when James, who is 6' 11", asked to use her phone to call a doctor for his wife. When Richardson let him inside, James pulled a gun and threatened to kill her if she did not follow his orders. While attempting to close the front door and hold Richardson at the same time, James accidently fired the gun. James then bound and gagged Richardson with strips of cloth and forced her to go to his apartment. There, James raped Richardson on top of a towel he had placed on his bed. When James released her approximately three hours later, Richardson returned to work visibly upset. After discussing the ordeal and her fears with friends and coworkers, Richardson reported the rape to the police later that evening.
 
 
 10
 A warrant was issued for James's arrest. The police located James that night at the Kentucky State University gym, where he was officiating at a basketball game. After the game, the police arrested James as he prepared to leave the building carrying a gym bag.
 
 
 11
 A subsequent investigation produced substantial evidence that corroborated Richardson's testimony. Richardson was examined, and a lab analysis revealed semen on the vaginal swabs, vaginal smear, a tampon, and her underwear. Richardson's missing storm door panel was found in some bushes beneath the porch, and one latent print on the inside of the glass panel was identified as James's. The police found what appeared to be a .22 caliber bullet on the floor of Richardson's apartment near the door and a slash mark where the bullet apparently hit the wall. A .22 caliber pistol with the same serial number as the pistol that Richardson reported stolen was found in the gym bag that James was carrying at the time of his arrest. The pistol was missing only one live round. The gym bag also contained cloth strips that matched Richardson's description of the items used to bind and gag her and that contained saliva from a person with the same secretor type as Richardson. Finally, a towel containing semen was found in James's bathroom, but the quantity was too small to determine the blood type.
 
 
 12
 To support his theory that Richardson was lying, James presented two witnesses. Marion Bates testified that he resides next door to Richardson's apartment building, was outside in his yard on the day of the rape, but noticed nothing out of the ordinary on that day. Chuck Lambert, the landlord, testified that he often stops by his rental properties during the day, was not certain whether he stopped by Richardson's building on the day of the rape, but does not remember noticing anything out of the ordinary.
 
 
 13
 After careful review, we conclude that the government presented overwhelming evidence of James's guilt. Richardson was acquainted with James, she had plenty of time and opportunity to observe her assailant, and it is highly unlikely that she mistook someone else for her 6' 11" neighbor. Moreover, the government presented circumstantial and extrinsic evidence that collaborated almost every facet of Richardson's testimony, including the initial burglaries, the manner and location of the rape, the weapon used, the accidental firing of the pistol in Richardson's apartment, the cloth strips used to gag Richardson, and the towel used during the rape.
 
 
 14
 Accordingly, we hold that the trial court's error was non-prejudicial and harmless beyond a reasonable doubt and AFFIRM the district court's dismissal of James's petition for habeas corpus relief.