**Michael P. JAMES, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

Supreme Court of Kentucky.

Nov. 15, 1984.

C. Thomas Hectus, Gittleman & Barber, Louisville, for appellant.

David L. Armstrong, Atty. Gen., Penny R. Warren, Asst. Atty. Gen., Frankfort, for appellee.

WINTERSHEIMER, Justice.

The convictions of Michael P. James for first-degree rape, second-degree burglary, receiving stolen property under $100, and first-degree persistent felony offender, were originally affirmed by this Court on

March 30, 1983. *James v. Commonwealth*, Ky., 647 S.W.2d 794 (1983).

The United States Supreme Court granted certiorari and held that for federal constitutional purposes, James adequately invoked his substantive right to jury guidance, and Kentucky's distinction between admonitions and instructions is not the kind of firmly established and regularly followed state practice that can prevent implementation of a federal constitutional right. *James v. Kentucky*, — U.S. —, 104 S.Ct. 1830, 1835, 80 L.Ed.2d 346 (1984), mandate issued June 25, 1984. The U.S. Supreme Court did not reach the question of harmless error and remanded the matter for further proceedings.

In our first consideration of the James case, it was not necessary to decide whether it was harmless error beyond a reasonable doubt for the trial court to refuse to give a no-adverse inference instruction during the penalty phase of the trial because this Court determined that under long-standing Kentucky law, James's request for an "admonition" was not the equivalent of a request for an "instruction." *James, supra*.

Following the return of the guilty verdict, James was sentenced to 20 years on the rape charge, 10 years on burglary, 12 months on receiving stolen property, and his sentence on the rape charge was enhanced from 20 years to life after his conviction as a first-degree persistent felon.

The issue presented here is whether the refusal of the trial court to give a requested admonition regarding the defendant's failure to testify was harmless error beyond a reasonable doubt.

James argues that the failure to give an admonition can never be harmless error.

This Court affirms the judgment because the denial of the requested admonition under the facts of this case was nonprejudicial or harmless error.

In *Commonwealth v. McIntosh*, Ky., 646 S.W.2d 43 (1983), we held that the failure to give a requested instruction on the effect of the defendant's refusal to testify can be nonprejudicial error if there is overwhelming evidence of guilt and the result would not have been any different when the case is considered as a whole.

In *Carter v. Kentucky*, 450 U.S. 288, 101 S.Ct. 1112, 67 L.Ed.2d 241 (1981), the United States Supreme Court held that a Kentucky trial court is constitutionally required, upon proper request, to instruct the jury that no adverse inferences may be drawn from the defendant's failure to testify. The U.S. Supreme Court declined to reach the question of harmless error. Consequently, *Carter, supra*, leaves open the question of whether under certain circumstances the failure to give the requested instruction could be nonprejudicial error pursuant to the standard set out in *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

In *Chapman, supra*, the court emphasized that some constitutional rights are so basic to a fair trial that their infraction can never be harmless error. *Chapman* involved repeated and direct references to the silence of the defendant at trial, coupled with inconclusive evidence. It appears that the court did not believe that any and all references by the trial court and/or the prosecutor to the defendant's silence were of such a constitutional magnitude that they could never be harmless error. As noted in *Chapman*, reversal is inappropriate where the comments did not contribute to the verdict.

In *Carter, supra*, the court compared the lack of jury guidance with the impact of adverse comment and instructions on the defendant's failure to testify, such as occurred in *Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965). The argument by James that a *Carter* violation is more harmful than a *Griffin* violation is unconvincing. We believe that because adverse comment on a defendant's silence may be nonprejudicial error, then also, the absence of comment may be equally harmless. *See, Chapman*.

The U.S. Supreme Court recently reaffirmed its rejection of a rule requiring au-

tomatic reversal in cases involving violations of the *Griffin* principle. *See United States v. Hastings,* 461 U.S. 499, 103 S.Ct. 1974, 1980, 76 L.Ed.2d 96 (1983).

In *Hastings, supra,* the same test was used as applied by this Court in *McIntosh, supra.* The doctrine of nonprejudicial error has been established in Kentucky in *Niemeyer v. Commonwealth,* Ky., 533 S.W.2d 218 (1976) and *Abernathy v. Commonwealth,* Ky., 439 S.W.2d 949 (1969), in conformity with the *Chapman* principles.

■ The contention that the alleged errors were made by the trial judge rather than the prosecutor and therefore can never be harmless is unpersuasive. It is the effect of the error, not the perpetrator. In *Conway v. Anderson,* 698 F.2d 282 (6th cir., 1983), instructions which violated *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), were held to be nonprejudicial.

■ Therefore, we conclude that errors in regard to the defendant's silence, whether they are made by the prosecution or the trial judge under a particular circumstance, may be harmless error.

Under all the circumstances in this case, there was overwhelming evidence of guilt and a careful examination of the entire record shows there is no substantial possibility that the result would have been any different.

At the trial, the defense of James was that the victim's story was completely false and that he was not involved. However the victim unequivocally identified her attacker as Mike James, a neighbor whom she knew only by his first name. From her report and other available information, the police were able to identify the 6'11" James at a basketball gym later that evening. He was observed picking up a gym bag from the bleachers as he prepared to leave before being apprehended at the exit. Later the police discovered that the bag contained a pistol with the same serial number as the gun the victim reported stolen from her apartment on April 23, 1981. The bag also contained two cloth strips matching the victim's description of the items used to bind and gag her. Saliva from a person with the same blood type as the victim was found in the knot of the gag. A metal slug was found in the front room of the victim in a position consistent with her description of James's accidental firing of the pistol and the gun in his possession that evening was missing only one live round.

Following the May 6, 1981 hospital examination of the victim, laboratory reports indicated semen in the vaginal swabs, smear and items of clothing. On the inside lower portion of the storm door panel discarded during the May 1, 1981 burglary of the victim's apartment, the police found a fingerprint which was established as that of the accused. The evidence indicated that James observed the victim nailing her windows shut after the April 23, 1981 burglary.

■ A careful examination of the evidence indicates strong direct and circumstantial evidence of overwhelming quality relating to James's guilt. Under all the evidence and the record considered as a whole, we must conclude that the alleged error was nonprejudicial or harmless beyond any reasonable doubt.

The judgment of conviction is affirmed.

All concur.