593 So.2d 198 (1992)
Tony Randall WATTS, Appellant,
v.
STATE of Florida, Appellee.
No. 74776.
Supreme Court of Florida.
January 2, 1992.
Rehearing Denied March 3, 1992.
*200 Nancy Daniels, Public Defender and David A. Davis, Asst. Public Defender, Tallahassee, for appellant.
Robert A. Butterworth, Atty. Gen., and Mark C. Menser, Asst. Atty. Gen., Tallahassee, for appellee.
PER CURIAM.
Tony Randall Watts, a prisoner under sentence of death, appeals his convictions of first-degree murder, armed burglary with an assault, armed robbery, and sexual battery using physical force and sentences attendant thereto. We have jurisdiction under article V, section 3(b)(1) of the Florida Constitution.
Upon returning home from jogging on the morning of February 18, 1988, Glenda Jurado was forced toward her house at gunpoint by a man later identified as Watts. Watts told her he had just been released from prison and needed fifty dollars to leave town. When her husband, Simon, answered the door, Glenda told him Watts had a gun and wanted money. Although the Jurados gave him all the money they had, about fifteen dollars, Watts demanded more money and warned them if they did not give it to him he would kill Glenda. The Jurados then gave Watts a piggy bank from the study. After looking through the rest of the house, Watts told Simon to get undressed in the bathroom. While Simon was getting undressed, Watts told Glenda to undress also. She disrobed from the waist down. After penetrating Glenda with his finger, Watts attempted to have sexual intercourse with her but was unsuccessful. When her husband saw what was happening, he yelled at Watts and threw a chair at him. Watts was knocked into the hallway, where the two men began to struggle. Glenda ran from the house. She then heard a shot and her husband's scream. Watts ran from the house with a gun in his hand and fled down the street. After attempting to use the telephone, Simon ran out of the house and collapsed on the front lawn. He died shortly thereafter from a gunshot wound to the mouth that severed an artery leading to his brain.
During an argument over money in late February 1988, Watts told his girlfriend, who testified at trial, that he had killed someone for her. Watts explained that he and a "dude was tussling over a chair and then [Watts] shot him."
In September 1988 Glenda Jurado identified Tony Watts as the assailant when she was shown Watts' picture as part of a photopack. A neighbor who had seen the assailant flee also identified Watts. Watts' baseball cap was found inside the Jurados' house, hairs that were microscopically similar to Watts' were found on the cap, and Watts' fingerprints were found on the inside front porch door of the house.
*201 Watts was charged with first-degree murder, armed burglary with an assault, armed robbery, and armed sexual battery. At the close of the State's case, the trial court granted Watts' motion for a judgment of acquittal as to the armed sexual battery count, reducing the charge to sexual battery using physical force. The jury found Watts guilty on all counts and voted seven to five to recommend that Watts receive the death penalty. The trial court followed this recommendation and sentenced Watts to death, finding four aggravating and two mitigating factors. Watts was sentenced to consecutive life terms for the armed burglary and armed robbery convictions and to a thirty-year prison term for the sexual battery conviction, to be served consecutive to the other sentences. The judge also imposed a minimum mandatory sentence of three years for the use of a firearm in connection with these offenses.
Watts raises the following claims in this appeal: (1) the trial court erred in failing to appoint the diagnosis and evaluation team of the Department of Health and Rehabilitative Services (HRS) to examine Watts when the issue of his mental retardation was raised; (2) the court erred in finding Watts competent to stand trial; (3) the court erred in failing to advise Watts of his right to represent himself and in failing to conduct an inquiry pursuant to Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975); (4) the court erred in overruling Watts' objection to the prosecution's closing argument which was designed to elicit sympathy for the murder victim's wife; (5) the court erred in finding this murder especially heinous, atrocious, or cruel and in instructing the jury on this factor; (6) death is not proportionally warranted in this case; and (7) it is cruel and unusual punishment to execute a mentally retarded person convicted of first-degree murder.

COMPETENCY DETERMINATION
Prior to trial, defense counsel filed a motion for the appointment of an expert to assist in the preparation of an insanity defense, pursuant to Florida Rule of Criminal Procedure 3.216(a). In this motion counsel stated that Watts' "school records indicate psychological problems and an I.Q. in the mentally handicapped range. He is almost totally illiterate." The motion was granted and Dr. Ernest Miller, a psychiatrist, was appointed as a confidential expert. Counsel later filed a suggestion of incompetence and request for continuance, pursuant to Florida Rules of Criminal Procedure 3.190(g) and 3.210. In this motion, counsel pointed out that there was evidence of mental retardation and requested that qualified experts be appointed to examine Watts to determine his competency to stand trial. This motion was also granted and Dr. Barnard, a psychiatrist, and Dr. Fennell, a clinical psychologist, were appointed to examine Watts.
Prior to the competency hearing, defense counsel filed a motion requesting that a third mental health professional be appointed to examine Watts to determine his competency to stand trial. Counsel specifically requested that an expert in mental retardation be appointed to evaluate Watts' competency and suggested that Dr. Joyce Carbonell, a clinical psychologist, be appointed. The motion was denied, but Dr. Carbonell was ultimately retained as a defense witness and testified on Watts' behalf during the competency proceedings.
At the hearing on competency, defense counsel and the State stipulated to the qualifications of the three mental health experts. Defense counsel never questioned Dr. Barnard's or Dr. Fennell's qualifications to express an opinion concerning Watts' competency to stand trial. Dr. Barnard testified that his examination revealed that Watts was competent to stand trial and was not retarded but was of borderline intelligence. In Dr. Fennell's opinion, Watts was competent to stand trial, as long as trial proceedings were explained to him in terms that he was capable of understanding and any questions asked of him were simplified and repeated. Dr. Fennell testified that test results revealed that Watts had an I.Q. of 71, which indicates a borderline intelligence. Dr. Carbonell, who was retained by the defense, testified that *202 Watts had an I.Q. of 65 and would be considered mildly retarded. In her opinion Watts did not have the present ability to consult with his attorney with a reasonable degree of understanding or to understand the proceedings against him. Finding the testimony of Dr. Barnard and Dr. Fennell more credible than that of Dr. Carbonell, the trial court found Watts competent to stand trial.
First, we reject Watts' claim that reversible error occurred because the trial court failed to appoint the HRS diagnosis and evaluation team to evaluate his level of mental retardation and his competency to stand trial, as required under section 916.11(1)(d), Florida Statutes (1987), which provides:
If a defendant's suspected mental condition is mental retardation, the court shall appoint the diagnosis and evaluation team of the Department of Health and Rehabilitative Services to examine the defendant and determine whether he meets the definition of "retardation" in s. 393.063 and, if so, whether he is competent to stand trial.
(Emphasis added.)
A defendant has a fundamental right to a constitutionally adequate determination of his competency to stand trial when there is reasonable cause to believe that he is not mentally competent to proceed. See Drope v. Missouri, 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975); Pate v. Robinson, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966); Lane v. State, 388 So.2d 1022 (Fla. 1980). Although in Florida this determination is ultimately for the trial court, section 916.11(1)(b), Florida Statutes (1987), and Florida Rule of Criminal Procedure 3.210 provide for the appointment of no more than three nor fewer than two experts to examine a defendant and provide "advisory" reports regarding the defendant's competency to proceed. Muhammad v. State, 494 So.2d 969, 973 (Fla. 1986), cert. denied, 479 U.S. 1101, 107 S.Ct. 1332, 94 L.Ed.2d 183 (1987).
We agree that where, as here, it is suspected that a defendant is mentally retarded, the clear language of section 916.11(1)(d), Florida Statutes (1987), mandates the appointment of the diagnosis and evaluation team of HRS. However, this subsection merely supplements the provisions for appointment of experts contained in subsection (b) of the statute and Florida Rule of Criminal Procedure 3.210 and is not necessary to ensure a constitutionally adequate determination of a defendant's competency.
Therefore, while the trial court's failure to abide by the requirements of subsection (d) would have been a clear abuse of discretion had defense counsel requested the appointment of the HRS team or otherwise challenged the trial court's failure to comply with this provision, Watts' entitlement under this subsection was waived by counsel's failure to bring the statutory requirement to the trial court's attention or otherwise raise the error below. See Fowler v. State, 255 So.2d 513 (Fla. 1971). Further, even if the issue had been preserved for appeal, the failure to appoint the HRS team was harmless because Watts received a constitutionally adequate hearing on and determination of his competency.
Likewise, we reject Watts' challenge to the trial court's ultimate ruling that he was competent to stand trial. Where there is conflicting expert testimony presented on the issue of competency, it is the trial court's responsibility, as finder of fact in such proceedings, to resolve the disputed factual issue. Fowler, 255 So.2d at 514; King v. State, 387 So.2d 463 (Fla. 1st DCA 1980). Absent a showing of abuse of discretion, the decision of the trial court on such matters will be upheld. Carter v. State, 576 So.2d 1291, 1292 (Fla. 1989), cert. denied, ___ U.S. ___, 112 S.Ct. 225, 116 L.Ed.2d 182 (1991). The record in this case contains sufficient evidence that Watts understood the charges against him and could assist in his defense to support the trial court's ruling.

GUILT PHASE
Watts' third claim, that the trial court erred in failing to advise him of his right to *203 represent himself and in failing to conduct a Faretta[1] inquiry when he requested that another attorney be appointed, is also without merit. During jury selection, Watts informed the trial court that he was dissatisfied with his attorneys because they allegedly had not been to see him in the jail. A short time later, Watts requested that another attorney be appointed. Although no further inquiry was made at that time, defense counsel later addressed Watts' allegations and explained that he and cocounsel had seen Watts on a number of occasions and Watts' complaint was likely based on his lack of understanding of what occurred during those meetings.
First, because there was no unequivocal request for self-representation, Watts was not entitled to an inquiry on the subject of self-representation under Faretta. Hardwick v. State, 521 So.2d 1071, 1073 (Fla.), cert. denied, 488 U.S. 871, 109 S.Ct. 185, 102 L.Ed.2d 154 (1988). We also reject Watts' claim that the trial court erred by failing to conduct further inquiry in connection with his request for another attorney. Where a defendant seeks to discharge court-appointed counsel due to alleged incompetency, it is incumbent upon the trial court to make a sufficient inquiry of the defendant and counsel to determine whether there is reasonable cause to believe that counsel is not rendering effective assistance. Hardwick, 521 So.2d at 1074; Nelson v. State, 274 So.2d 256 (Fla. 4th DCA 1973). However, under the circumstances present in this case, no further inquiry was warranted.
Next, we address Watts' claim that the trial court erred by failing to grant a mistrial because of improper argument by the prosecutor. At the beginning of the State's guilt-phase closing argument, the prosecutor made the following comments:
Ladies and gentlemen, we are here today because Simon Jurado is dead. We are here because he died an evil and tragic death. We are here today because the last thing that Simon Jurado saw before he died was his wife Glenda as she laid on this bed in the guest room with a gun in his face as the defendant sexually assaulted and violated her and raped her.
We are also here today because Glenda Jurado's life will never be the same.
(Emphasis added.) Defense counsel objected to the last comment and requested a mistrial, arguing that the comment was irrelevant and designed to evoke the jury's sympathy. While we agree that this comment was improper because it was not relevant to a determination of Watts' guilt[2] and only served to improperly inflame the jury's emotions, any error was harmless because, on this record, there is no reasonable possibility that the comment affected the verdict. State v. DiGuilio, 491 So.2d 1129 (Fla. 1986); Jennings v. State, 453 So.2d 1109 (Fla. 1984), vacated on other grounds, 470 U.S. 1002, 105 S.Ct. 1351, 84 L.Ed.2d 374 (1985); see State v. Murray, 443 So.2d 955, 956 (Fla. 1984) (conviction will not be overturned due to prosecutorial error during closing argument unless error "was so prejudicial as to vitiate the entire trial").
Watts does not challenge the sufficiency of the evidence to support his convictions. Our review of the record reveals competent and substantial evidence to support the verdicts. Accordingly, finding no reversible error during the guilt phase of Watts' trial, the convictions are affirmed.

PENALTY PHASE
In imposing the death sentence, the trial judge found four aggravating circumstances: (1) Watts had previous convictions for an aggravated assault and an aggravated battery; (2) Watts committed the murder during the course of a sexual battery *204 or while attempting to escape from it; (3) Watts committed the murder for financial gain; and (4) Watts committed the murder in an especially heinous, atrocious, or cruel manner.[3] The court found the following mitigating circumstances to be established by the evidence:
1. The Defendant has a low I.Q., which somewhat reduces his judgmental abilities. However, the Court specifically finds that the Defendant was not under the influence of extreme mental or emotional disturbance, and the evidence is clear that the Defendant did appreciate the criminality of his conduct and, when he wanted to, was able to conform his conduct to the requirements of law.
2. The Defendant was twenty-two years of age at the time of the murder.
Turning to Watts' challenges to his sentence of death, we agree that this murder was not especially heinous, atrocious, or cruel, under section 921.141(5)(h), Florida Statutes (1987). The victim in this case died as a result of a single gunshot wound to the mouth which was sustained after he threw a chair at Watts. There is no evidence of extreme and outrageous depravity exemplified by either the desire to inflict a high degree of pain or utter indifference to or enjoyment of the suffering of the victim. Shere v. State, 579 So.2d 86 (Fla. 1991); Cheshire v. State, 568 So.2d 908, 912 (Fla. 1990); State v. Dixon, 283 So.2d 1 (Fla. 1973), cert. denied, 416 U.S. 943, 94 S.Ct. 1950, 40 L.Ed.2d 295 (1974). Where, as here, death results from a shooting that is ordinary in the sense that there are no additional acts to set the murder apart from the norm of capital felonies, this aggravating factor does not apply. See Cochran v. State, 547 So.2d 928 (Fla. 1989) (death resulted from single gunshot following abduction at gunpoint); Jackson v. State, 502 So.2d 409 (Fla. 1986) (robbery victim died shortly after single fatal shot), cert. denied, 482 U.S. 920, 107 S.Ct. 3198, 96 L.Ed.2d 686 (1987); Lewis v. State, 398 So.2d 432, 438 (Fla. 1981) (victim died instantly from multiple gunshot wounds); Fleming v. State, 374 So.2d 954 (Fla. 1979) (murder committed by single shot fired when hostage grabbed gun). Watts does not challenge the remaining three aggravating circumstances. We do not believe that the erroneous consideration of the aggravating factor that the murder was especially heinous, atrocious, or cruel prejudicially affected the weighing process. Therefore, the error was harmless beyond a reasonable doubt. Rogers v. State, 511 So.2d 526 (Fla. 1987), cert. denied, 484 U.S. 1020, 108 S.Ct. 733, 98 L.Ed.2d 681 (1988).
Watts next contends that it is cruel and unusual punishment to execute a mentally retarded person convicted of committing a first-degree murder. However, two of the three examining mental health experts concluded that while Watts was of borderline intelligence, he was not mentally retarded. Even the defense psychologist found him to be only mildly retarded. Therefore, even if Watts' premise were correct, he would not be entitled to its benefits.
Finally, Watts argues that his sentence of death is disproportional. In reviewing a death sentence, this Court looks to the circumstances revealed in the record in relation to those present in other death penalty cases to determine whether death is appropriate. Livingston v. State, 565 So.2d 1288 (Fla. 1988). Here, even after the elimination of the finding that the murder was especially heinous, atrocious, or cruel, three aggravating factors remain to be weighed against the fact that Watts was twenty-two years old when the crime was committed and the nonstatutory finding of low I.Q. We conclude that the imposition of the death penalty upon the jury's recommendation was clearly consistent with this Court's prior decisions. E.g., Freeman v. State, 563 So.2d 73 (Fla. 1990) (death penalty not disproportional when two aggravating circumstances were weighed against mitigating evidence of low intelligence and abused childhood), cert. denied, ___ U.S. ___, 111 S.Ct. 2910, 115 L.Ed.2d 1073 (1991); Kight v. State, 512 So.2d 922 (Fla. 1987) (death penalty proportionally imposed with two aggravating circumstances *205 despite evidence of mental retardation and a deprived childhood), cert. denied, 485 U.S. 929, 108 S.Ct. 1100, 99 L.Ed.2d 262 (1988). The suggestion that these cases might be distinguished because Watts shot the victim in response to the victim's unexpected advances must fail because these advances were precipitated by the fact that Watts was sexually battering the victim's wife.
Watts' reliance on Cochran v. State, 547 So.2d 928 (Fla. 1989), is misplaced because Cochran was an override of a jury recommendation of life imprisonment which involved a wholly different legal principle. Fitzpatrick v. State, 527 So.2d 809 (Fla. 1988), is also distinguishable, because in that case the trial judge found the existence of both of the statutory mental mitigating circumstances. Moreover, the experts unanimously recognized the defendant's serious mental defects, one finding extensive brain damage with symptoms resembling schizophrenia and another characterizing him as "crazy as a loon."
Accordingly, the convictions and sentence of death are affirmed.
It is so ordered.
SHAW, C.J., and OVERTON and GRIMES, JJ., concur.
McDONALD, J., concurs with an opinion.
KOGAN, J., concurs in part and dissents in part with an opinion, in which BARKETT, J., concurs.
McDONALD, Justice, concurring.
On the issues discussed in the majority opinion I concur. Although it was not argued, I believe the trial judge erred in finding that the crime was committed for financial gain. While it is true that the homicide was preceded by a robbery, the taking of money was concluded and had nothing to do with the acts leading to the killing itself. I am satisfied, however, that the addition of this factor was of no consequence in the judge's decision to impose death and hence I join in the decision to affirm.
KOGAN, Justice, concurring in part and dissenting in part.
After comparing the circumstances of this case with those of other death penalty cases, it is clear to me that a sentence of death is not proportionately warranted.
It is true that generally evidence of low intelligence standing alone does not require the reversal of the death penalty where there are valid aggravating factors. See, e.g., Kight v. State, 512 So.2d 922 (Fla. 1987), cert. denied, 485 U.S. 929, 108 S.Ct. 1100, 99 L.Ed.2d 262 (1988); Freeman v. State, 563 So.2d 73 (Fla. 1990), cert. denied, ___ U.S. ___, 111 S.Ct. 2910, 115 L.Ed.2d 1073 (1991). However, in this case there is more than mere low intelligence which militates against imposition of the death penalty. Not only did the trial court find that Watts' judgment was reduced by his low intelligence, there is evidence Watts shot the victim during a struggle that ensued immediately after the victim hit Watts with a chair. These facts distinguish this case from Kight and Freeman, which are relied upon by the majority.
In Kight, although there was evidence presented of Kight's low I.Q., this factor was not found in mitigation and there was no finding that the defendant's judgment was in any way impaired. There was also no evidence that the murder was precipitated by any unexpected actions on the part of Kight's victim. In fact, according to testimony, Kight killed the victim whom he had robbed so he would not be identified.
In Freeman, although there was evidence that the defendant was surprised by the victim while burglarizing the victim's house and Freeman's low intelligence was found as a nonstatutory mitigating factor, there was no finding that his judgment was impaired. Moreover, Freeman had previously been convicted of first-degree murder, armed robbery, and burglary of a dwelling, all of which had been committed just three weeks before the murder at issue.
The majority totally discounts the fact that Watts shot the victim in response to the victim's unexpected advances with the chair. It is true that the victim's advances *206 were precipitated by Watts' actions. However, such was also the case in both Fitzpatrick v. State, 527 So.2d 809 (Fla. 1988), and Cochran v. State, 547 So.2d 928 (Fla. 1989).[4]
In both Fitzpatrick and Cochran, the respective defendants, whose judgment at the time of the murder was found to be impaired either by low intelligence or mental disorder, shot the victim after being startled by the victim's unexpected advances. In Fitzpatrick, the defendant who was holding hostages was surprised by a police officer who pointed his gun at Fitzpatrick's head through a partition near where Fitzpatrick was standing. Fitzpatrick immediately whirled around and fired, hitting the officer in the head. Similarly, in Cochran, the defendant shot the victim whom he had abducted and was holding at gunpoint when she jumped at him and tried to stab him. See also Caruthers v. State, 465 So.2d 496 (Fla. 1985) (death not proportionately warranted where defendant shot store clerk who jumped at him during robbery); Livingston v. State, 565 So.2d 1288 (death not appropriate for seventeen-year-old defendant who shot convenience store attendant during robbery where there were two valid aggravating circumstances and was mitigating evidence of an abusive childhood which resulted in marginal intellectual functioning).
After comparing the circumstances of this case with the above decisions of this Court, I cannot say that this is one of "`the most aggravated, the most indefensible of crimes'" for which the death penalty is reserved. Fitzpatrick, 527 So.2d at 811 (quoting State v. Dixon, 283 So.2d 1, 8 (1973), cert. denied, 416 U.S. 943, 94 S.Ct. 1950, 40 L.Ed.2d 295 (1974)). Accordingly, while I concur in that portion of the majority opinion that affirms the convictions, I must dissent from that portion that finds death proportionately warranted in this case.
BARKETT, J., concurs.
NOTES
[1] Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).
[2] Watts does not contend that this improper guilt-phase argument concerning the long-term effect of the murder on the victim's wife constituted error in connection with his sentencing under Booth v. Maryland, 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987), overruled, Payne v. Tennessee, ___ U.S. ___, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991). Therefore, we do not reach this issue.
[3] § 921.141(5)(b), (d), (f), (h), Fla. Stat. (1987).
[4] The majority is correct that Cochran v. State, 547 So.2d 928 (Fla. 1988), involved a jury override. However, this Court has looked to such cases when conducting a proportionality review. For example, in Fitzpatrick v. State, 527 So.2d 809, 812 (Fla. 1989), we relied on the jury override cases of Ferry v. State, 507 So.2d 1373 (Fla. 1987), and Amazon v. State, 487 So.2d 8 (Fla.), cert. denied, 479 U.S. 914, 107 S.Ct. 314, 93 L.Ed.2d 288 (1986), in reaching our conclusion that death was not warranted in that case.