QUINCE, J.
Raymond Marston seeks review of the decision of the Second District Court of Appeal in Marston v. State, 79 So.3d 72 (Fla. 2d DCA 2011), on the ground that it expressly and directly conflicts with .the decision of the Fourth District Court of Appeal in Varona v. State, 674 So.2d 823 (Fla. 4th DCA 1996), on a question of law. We have jurisdiction. See art. V, § 3(b)(3), Fla. Const. We are asked to decide whether the prosecutor impermissi-bly commented on Marston’s constitutional right to remain silent, and if so, whether the comments were harmless beyond a reasonable doubt. We conclude that the prosecutor’s comments were improper and harmful. Accordingly, we quash the Second District’s decision in Marston and approve the Fourth District’s decision in Va-rona.
FACTS AND PROCEDURAL HISTORY
On June 19, 2008, the State charged Marston with three counts of sexual battery (deadly weapon or force causing injury) (§ 794.011(3), Fla. Stat. (2008)), one count of kidnapping (§ 787.01(1)(a)2., Fla. Stat. (2008)), one count of aggravated battery (great bodily harm) (§ 784.045(1)(a)1., Fla. Stat. (2008)), and one count of robbery (§ 812.13(1), (2)(c), Fla. Stat. (2008)). During voir dire, the prosecutor first broached the matter relating to Marston’s constitutional right to remain silent:
PROSECUTOR: ... One of [the basic rules governing criminal cases] is that it is my job and [co-counsel’s] job to prove the case to you. They don’t have to prove a single thing. They can sit there and play dominoes while we talk and put witnesses on for the next several days. They can do that because it is my burden.
The prosecutor continued to highlight Marston’s constitutional right during voir dire:
PROSECUTOR: ... You can’t hold it against Mr. Marston or his attorneys if they sit there and play dominoes the whole time. Do you understand that?
VENIRE MEMBER: Kind of. So you will be talking the whole, time to prove that he’s guilty?
PROSECUTOR: Exactly. Exactly.
Because it is the State of Florida’s burden and everybody has this right. You are presumed innocent until I prove that you are guilty.
So like I said, Mr. Marston can sit there and not say a word. He can read magazines. He could bring in a laptop and play on Facebook all day long if he wanted to, and you cannot hold that against him. Do you understand? Does everyone understand that?
VENIRE MEMBERS: (Nodding heads affirmatively.)
[[Image here]]
PROSECUTOR: And I touched upon Mr. Marston doesn’t have to say a word. He doesn’t have to say a single word this whole trial. You may not even hear his voice at all because I can’t put him on the stand. Does everybody understand that?
[[Image here]]
*566 [Venire member], you understand that he has the absolute right to remain silent?
VENIRE MEMBER: Yes.
PROSECUTOR: You can’t go back into that jury room when you deliberate and think, you know what, I wonder what he would have said? Do you understand that?
VENIRE MEMBER: Yes.
VENIRE MEMBER: So he doesn’t have to be here?
[[Image here]]
PROSECUTOR: He has a right to stay completely quiet. It’s my job to prove this case.
VENIRE MEMBER: But he can talk?
PROSECUTOR: He can if he wants to.
VENIRE MEMBER: His people, they can talk for him?
PROSECUTOR: They can do whatever they feel is appropriate. Like I said, they may want to put him on the stand. Do you have a problem with that, [veni-re member]?
VENIRE MEMBER: No.
[[Image here]]
PROSECUTOR: You would hold me to my burden and make sure it is only to this table that you look to for the evidence; do you understand that?
VENIRE MEMBER: They can’t give any evidence?
PROSECUTOR: I’m sure the defense will probably go into that a little more.
DEFENSE COUNSEL: Judge, I object. May we approach?
THE COURT: Approach the bench.
During the bench conference, the following exchange occurred:
DEFENSE COUNSEL: Basically, Judge, I think I see where [the prosecutor] is going with this, but this guy is getting confused, and he’s going to ask us to address his right to remain silent. Can the Court gives [sic] some kind of curative that he has a right to remain silent because this guy is getting the wrong idea?
THE COURT: You will have an opportunity to question him if you don’t think that [the prosecutor] has done an adequate job. Make clear to him that they have no obligation.
PROSECUTOR: Absolutely.
THE COURT: No burden at all on the defense and then move on.
PROSECUTOR: I was planning on doing that. He has a right to remain silent and that’s it.
THE COURT: Okay. Thank you.
After the bench conference concluded, the following exchange transpired:
PROSECUTOR: Okay. [Venire member], I know you had those few questions for me. Now, as I explained, totally the job of the State of Florida, my burden, you’re okay with that?
VENIRE MEMBER: Yes.
PROSECUTOR: Mr. Marston has the absolute right to remain silent. Do you understand that?
VENIRE MEMBER: Yes.
PROSECUTOR: And would you — do you have a problem with any of those two issues?
VENIRE MEMBER: So he is allowed to speak during the case?
PROSECUTOR: Like I said, the defense will probably speak to you about that. He can, if he wants to, but he has the absolute right to remain silent. You understand that?
VENIRE MEMBER: Yes.
PROSECUTOR: And you agree with that burden and with his rights; is that correct?
VENIRE MEMBER: Yes.
*567 PROSECUTOR: Anyone else disagree with what we have just said?
VENIRE MEMBER: I just have a brief question. So he will not explain his position at all as far as — he would just remain silent?
PROSECUTOR: We’re not going into the facts of the case at this point. It’s just to get a glimpse of who you are. We have to explain to you that as jurors, you have to follow certain rules. One of those rules is that you accept and make sure and you promise that you will hold me to my burden, that you will look to me for the evidence. You understand that?
VENIRE MEMBER: Yes.
[[Image here]]
PROSECUTOR: You also accept that one of the other rules is that Mr. Mar-ston has the absolute right to keep his mouth shut this entire time. Do you accept that?
VENIRE MEMBER: No.
PROSECUTOR: Okay. And the defense will probably get into that a little more with you. Anyone else feel the same way?
VENIRE MEMBERS: (No response.)
The jurors were selected before the court recessed for the day. The following morning, after receiving consent from Marston’s counsel, the trial court instructed the jury on Preliminary Instruction 2.1, Florida Standard Jury Instructions in Criminal Cases, which provides in pertinent part:
In every criminal proceeding the defendant has the absolute right to remain silent. At no time is it the duty of a defendant to prove his innocence. From the exercise of a defendant’s right to remain silent, a jury is not permitted to draw any inference of guilt, and the fact that a defendant did not take the witness stand must not influence your verdict in any manner whatsoever.
During its case-in-chief, the State presented the following evidence regarding the events that occurred on the night of May 26, 2008. While walking on a bridge in Hillsborough County, a man approached the victim from behind and punched her in the face nine times. The victim’s eyes were swollen and her glasses had flown off. After she fell to the ground, the man proceeded to push her head down onto the concrete, sat on her, and demanded money. He discovered $13 in her purse. The man put material over her head which covered her eyes; he forced her to crawl to the other end of the bridge. The victim was moved to an embankment, then back onto the bridge, and then down the embankment. The victim pleaded for the man to release her, but he told her that he would kill her if she tried to escape.
The man ordered the victim to lie down. He began kissing and fondling the victim’s breasts. He performed oral sex on her; he digitally penetrated her and engaged in vaginal intercourse. Before he let her go, the victim testified that the man said he was not going to ejaculate inside of her so that he would not get caught. Although the victim admitted that she never saw her attacker’s face, the victim felt a scab on the top of his head and a prominent Adam’s apple. The victim testified that she had consensual sexual intercourse with her ex-boyfriend the morning before the attack. A sexual assault kit was taken from the victim after the attack, which included swabs of the victim’s breasts, vagina, and vulva.
The following day, a detective observed a man on a bicycle near the crime scene, who appeared to match the victim’s description of her attacker. The detective stopped the man, identified as Marston, for a traffic violation. Marston, who had an *568 injury on his forehead and an abrasion on the crown of his head, denied any knowledge of the sexual attack and told law enforcement that he was nowhere in the vicinity of the bridge. Marston was arrested for trespass. After being presented with a six-person photographic lineup, the victim, with seventy-five percent certainty, identified her attacker as Marston. The detective testified that the victim looked at the lineup for approximately five minutes.
Although he initially refused to comply, law enforcement obtained Marston’s buccal swab pursuant to a search warrant. The swab from the victim’s breasts revealed a foreign DNA profile consisting of amylase — which indicated the possible presence of saliva. The foreign DNA profile matched Marston’s DNA sample at thirteen loci. The DNA profile from the vaginal swabs revealed a foreign contributor who could not be conclusively determined. The DNA profile from the vulval swabs revealed the presence of seminal fluid and amylase; Marston was excluded as the contributor to the DNA profile, while the victim’s ex-boyfriend could not be excluded as the contributor. Marston’s DNA profile matched blood discovered at the crime scene. In October 2008, Marston escaped from jail and a few days later he was apprehended across the street from the scene of the crime.[1] The defense did not put on a case.
While instructing the jury, the trial judge provided Florida Standard Jury Instruction 3.7 (criminal), which states in pertinent part:
The defendant has entered a plea of not guilty. This means you must presume or believe the defendant is innocent. The presumption stays with the defendant as to each material allegation in the information through each stage of the trial unless it has been overcome by the evidence to the exclusion of and beyond a reasonable doubt.
To overcome the defendant’s presumption of innocence, the State has the burden of proving the crime with which the defendant is charged was committed and the defendant is the person who committed the crime.
The defendant is not required to present evidence or prove anything.
The trial judge also instructed the jury on Florida Standard Jury Instruction 3.9(a) (criminal), which provides:
The constitution requires the State to prove its accusations against the defendant. It is not necessary for the defendant to disprove anything. Nor is the defendant required to prove his innocence. It is up to the State to prove the defendant’s guilt by evidence.
The defendant exercised a fundamental right by choosing not to be a witness in this case. You must not view this as an admission of guilt or be influenced in any way by his decision. No juror should ever be concerned that the defendant did or did not take the witness stand to give testimony in the case.
The jury convicted Marston of three counts of sexual battery (deadly weapon or force causing injury), one count of kidnapping, one count of aggravated battery (great bodily harm), and one count of attempted robbery. The trial court adjudicated Marston guilty in accordance with the jury’s verdict. Marston received life imprisonment for each sexual battery count and the kidnapping count. For the aggravated battery and attempted robbery counts, Marston received prison terms of *569 fifteen years and five years, respectively. All sentences were ordered to run consecutively.[2]
On appeal to the Second District, Mar-ston argued that the trial court abused its discretion in refusing to give a curative instruction relating to the prosecutor’s voir dire statements. Marston, 79 So.3d at 73-74. The district court stated, “Any remark ‘fairly susceptible’ of interpretation as a comment on the defendant’s failure to testify is an impermissible constitutional violation, and even cursory references to it during voir dire are improper.” Id. at 74 (quoting Varona, 674 So.2d at 825). The Second District found that the prosecutor’s remarks were improper and noted that they were “remarkably similar” to the statements made in Varona, which the Fourth District held to be harmful error. Id. However, the Second District did not conclude that the trial court abused its discretion in denying a curative instruction. Id. at 75. Finding that there was “no reasonable possibility that the failure to give a curative instruction affected the verdict,” the district court reasoned that the evidence of identification was stronger than in Varona. Id. at 74. The district court pointed out that the trial judge “directed the prosecutor to make it clear to the jurors that the defense had no burden of proof. And, the trial judge instructed the jury before deliberating that they must not be influenced in any way by [Mr. Mar-ston’s] decision not to testify.” Id. at 75 (citing Crain v. State, 894 So.2d 59, 70 (Fla.2004) (“[W]e assume that the jury understood and properly applied the instructions ... ”)). Furthermore, the district court noted that Marston did not testify, and thus, “the possibility of coercion to testify is absent.” Id. Accordingly, the Second District affirmed Marston’s convictions and sentences. Id.
ANALYSIS
Marston argues that the prosecutor’s statements- during voir dire violated his right to remain silent under the Fifth and Fourteenth Amendments to the United States Constitution. The State, on the other hand, maintains that the prosecutor’s voir dire comments were not improper. It is axiomatic that a defendant has the constitutional right to decline to testify against himself or herself in a criminal proceeding. See U.S. Const. amend. V (“No person ... shall be compelled in any criminal case to be a witness against himself.”); art. I, § 9, Fla. Const. (“No person shall be ... compelled in any criminal matter to be a witness against oneself.”); see also State v. Kinchen, 490 So.2d 21, 22 (Fla.1985) (“The right to stand mute at trial is protected by both our state and federal constitutions.”). In Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965), the United States Supreme Court held that
the Fifth Amendment, in its direct application to the Federal Government, and in its bearing on the States by reason of the Fourteenth Amendment, forbids either comment by the prosecution on the accused’s silence or instructions by the court that such silence is evidence of guilt.
Id. at 615, 85 S.Ct. 1229.
“In Florida, we have adopted a very liberal rule for determining whether a comment constitutes a comment on silence.” State v. DiGuilio, 491 So.2d 1129, 1135 (Fla.1986). “[A]ny comment on, or which is fairly susceptible of being interpreted as referring to, a defendant’s failure to testify is error and is strongly dis *570 couraged.”[3] Rodriguez v. State, 753 So.2d 29, 37 (Fla.2000) (quoting State v. Marshall, 476 So.2d 150, 153 (Fla.1985)); see also DiGuilio, 491 So.2d at 1139 (“[A]ny comment, direct or indirect, by anyone at trial on the right of the defendant not to testify or to remain silent is constitutional error and should be avoided.”). “Because of the common belief that the innocent have nothing to hide, courts vigilantly protect the right to remain silent against devaluation by innuendo or faint praise.” Varona, 674 So.2d at 825.
In addition to our case law, Florida Rule of Criminal Procedure 3.250 prohibits the prosecutor from commenting on the defendant’s failure to testify:
In all criminal prosecutions the accused may choose to be sworn as a witness in the accused’s own behalf and shall in that case be subject to examination as other witnesses, but no accused person shall be compelled to give testimony against himself or herself, nor shall any prosecuting attorney be permitted before the jury or court to comment on the failure of the accused to testify in his or her own behalf.
Fla. R.Crim. P. 3.250 (emphasis added). Florida Standard Jury Instruction 2.1 (criminal), states in pertinent part, “From the exercise of a defendant’s right to remain silent, a jury is not permitted to draw any inference of guilt, and the fact that a defendant did not take the witness stand must not influence your verdict in any manner whatsoever.” This portion of Standard Jury Instruction 2.1 is given only if requested by the defendant.
In this case, it is abundantly clear that the prosecutor commented continuously on Marston’s constitutional right to remain silent during voir dire, including: Marston has the “absolute right” “to remain silent” and “keep his mouth shut this entire time,” Marston could “sit there and play dominoes the whole time,” “sit there and not say a word,” “read magazines,” and “play on Facebook,” and “I can’t put him on the stand.” We And that the extensive remarks iterated by the prosecutor were improper and demeaned Marston’s constitutional right to remain silent. The prosecutor “directly comment[ed] on [Mar-ston’s] silence and hammer[ed] the point home.” DiGuilio, 491 So.2d at 1136. Therefore, we conclude that the trial judge erred in not sustaining Marston’s objection and in refusing to give a curative instruction.
We are compelled to condemn the prosecutor’s voir dire comments, which amount to constitutional error. As we have emphasized before, “we strongly caution prosecutors against making comments that may be interpreted as comments on the defendant’s failure to testify or that impermissibly suggest a burden on the defendant to prove his or her innocence.” Rodriguez, 753 So.2d at 39. Furthermore,
we commend to trial judges the vigilant exercise of their responsibility to insure a fair trial. Where, as here, prosecuto-rial misconduct is properly raised on objection, the judge should sustain the objection, give any curative instruction that may be proper and admonish the prosecutor and call to his attention his professional duty and standards of behavior.
Bertolotti v. State, 476 So.2d 130, 134 (Fla.1985). The prosecutor’s comments in this instance are clearly comments on the defendant’s right to remain silent. Moreover, the nature of the comments de *571 meaned the right that is constitutionally protected by both the state and federal constitutions.
Harmless Error Analysis
“[C]omments on a defendant’s silence are subject to harmless error analysis.” DiGuilio, 491 So.2d at 1137. The State argues that if there were any improper comments made by the prosecutor, they were harmless. The harmless error test
places the burden on the state, as the beneficiary of the error, to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict or, alternatively stated, that there is no reasonable possibility that the error contributed to the conviction. Application of the test requires not only a close examination of the permissible evidence on which the jury could have legitimately relied, but an even closer examination of the impermissible evidence which might have possibly influenced the jury verdict.
[[Image here]]
The test is not a sufficiency-of-the-evidence, a correct result, a not clearly wrong, a substantial evidence, a more probable than not, a clear and convincing, or even an overwhelming evidence test. Harmless error is not a device for the appellate court to substitute itself for the trier-of-fact by simply weighing the evidence. The focus is on the effect of the error on the trier-of-fact. The question is whether there is a reasonable possibility that the error affected the verdict. The burden to show the error was harmless must remain on the state. If the appellate court cannot say beyond a reasonable doubt that the error did not affect the verdict, then the error is by definition harmful.
Id. at 1138-39 (citation omitted).
“[A] comment on the right to remain silent strikes at the heart of our criminal justice system.” Ventura v. State, 29 So.3d 1086, 1088 (Fla.2010). “Commenting on a defendant’s failure to testify is a serious error.” Kinchen, 490 So.2d at 22. “[C]omments on silence are high risk errors because there is a substantial likelihood that meaningful comments will vitiate the right to a fair trial.” DiGuilio, 491 So.2d at 1136. “[The purpose of the] judge’s instruction that the jury must draw no adverse inferences of any kind from the defendant’s exercise of his privilege not to testify ... is to remove from the jury’s deliberations any influence of unspoken adverse inferences.” Lakeside v. Oregon, 435 U.S. 333, 339, 98 S.Ct. 1091, 55 L.Ed.2d 319 (1978). “Without the cautionary instruction, the jurors were free to infer or speculate that a defendant who does not testify must surely be guilty, otherwise he would take the stand in his own behalf.” Andrews v. State, 443 So.2d 78, 84 (Fla.1983).[4]
In this case, the trial court refused Mar-ston’s request for a cautionary instruction. Instead, the trial court, during the bench conference, compounded the error when it directed the prosecutor to “[m]ake clear” that the defense has “no obligation.... No burden at all on the defense and then move on.” Although the prosecutor referred to the State’s burden, the prosecutor continued to improperly comment on Marston’s constitutional right to remain silent before the venire members. Mar-ston did not testify in his own behalf.
*572 We acknowledge that one day after voir dire, the trial court instructed the jury that if a defendant exercises the right to remain silent or not to testify at trial, the jury was “not permitted to draw any inference of guilt” and must not influence its verdict. We also acknowledge that two days after voir dire, the jury was instructed by the trial court that it “must not view [the defendant in not testifying] as an admission of guilt or be influenced in any way by his decision.” Although we have said that “[w]e must assume that — if properly charged — [jurors] will live up to the obligations of [the] oath ... to render a true verdict ‘according to the law and the evidence,’ ” Burnette v. State, 157 So.2d 65, 70 (Fla.1968) (quoting § 913.11, Fla. Stat. (1961)), we find that the prosecutor’s voir dire comments in this case were so prejudicial that the trial court’s instructions did not cure the harm.
In examining the evidence offered against Marston at trial, we note that the evidence was strong. Marston’s DNA was discovered on the victim’s breasts, the victim identified Marston as her attacker in a photographic lineup — with seventy-five percent certainty — and the victim testified that her attacker had a scab on the top of his head which was consistent with the detective’s testimony. However, the victim admitted at trial that she never saw her attacker’s face, the victim did not make an in-court identification of Marston as her attacker, there was no evidence establishing that the vaginal swabs contained Marston’s DNA, and Marston was excluded as the contributor to the DNA profile derived from the vulval swabs.
“[T]he harmless error analysis is not an ‘overwhelming-evidence test.’ ” Ven-tura, 29 So.3d at 1089 (quoting DiGuilio, 491 So.2d at 1139). In DiGuilio, we said:
Overwhelming evidence of guilt does not negate the fact that an error that constituted a substantial part of the prosecution’s case may have played a substantial part in the jury’s deliberation and thus contributed to the actual verdict reached, for the jury may have reached its verdict because of the error without considering other reasons untainted by error that would have supported the same result.
Id. at 1136 (quoting People v. Ross, 67 Cal.2d 64, 60 Cal.Rptr. 254, 429 P.2d 606, 621 (1967) (Traynor, C.J., dissenting), rev’d, 391 U.S. 470, 88 S.Ct. 1850, 20 L.Ed.2d 750 (1968)). As outlined above, the voir dire examination was replete with comments by the prosecutor relating to Marston’s constitutional right to remain silent. With these improper comments, the prosecutor invited the jury to infer guilt from Marston’s decision not to take the stand. “[I]t is difficult for the state to demonstrate that the prosecutor’s statements did not prompt the jury to consider [Marston’s] silence in evaluating the case.” Varona, 674 So.2d at 826. The right to remain silent may be difficult for some jurors to comprehend because it goes against a natural desire to hear each side of a story. This is true particularly in trials such as this one, where Marston is the only person who could have contradicted the State’s evidence. In light of the prosecutor’s impermissible comments, we conclude that the State has not proved that the error was harmless beyond a reasonable doubt. We are unable to say that there is no reasonable possibility that the constitutional error contributed to the conviction.[5]
*573 The Conflict Case
In Varona, the prosecutor made the following comments during voir dire:
Now, you understand obviously that the defendant has a right to remain silent ... [I]f the defendant does decide to testify, and he doesn’t have to do anything. He could sit there and play crossword puzzles as long as he behaves himself. [I]f the defendant were to choose to testify, were to give a statement, would you look at his testimony as you would the testimony of any other witness or person?
[[Image here]]
And you understand he doesn’t have to do anything in a criminal case. He doesn’t have to even say one word and that’s his right, okay?. You understand I can’t comply [sic] the defendant to take the witness stand either. So I can’t call him as a witness for any reason ...
674 So.2d at 824. Defense counsel objected, but was overruled by the trial court. Id. The defendant, who did not testify, was ultimately convicted. Id. On appeal, the Fourth District found that the prosecutor’s comments were improper because “they tended to demean a constitutional right and called undue attention to appellant’s decision whether or not to testify,” explaining that “[a]ny remark which is ‘fairly susceptible’ of being interpreted as a comment on a defendant’s failure to testify is an impermissible violation of the constitutional right to remain silent.” Id. at 825. In evaluating whether the error was harmless, the district court determined that the evidence was “strong, but not ‘clearly conclusive.’ ” Id. (quoting DiGuilio, 491 So.2d at 1138). The district court went on to say:
The victim of the robbery did not identify appellant as her assailant in court. From the time of his arrest, appellant protested his innocence. The trial court overruled appellant’s objection to the prosecutor’s comments and gave no curative instruction. Appellant did not take the stand, and it is difficult for the state to demonstrate that the prosecutor’s statements did not prompt the jury to consider appellant’s silence in evaluating the case. This is one of the reasons that a comment on a defendant’s silence has been described as a “high risk” error which has a substantial likelihood of requiring a new trial.
Id. at 825-26 (citation and footnote omitted). The Fourth District concluded that the State failed to prove beyond a reasonable doubt that the error was harmless. Id. at 826.
In comparing Varona with the instant case, we find that the prosecutors’ improper voir dire comments on the defendant’s right to remain silent were sufficiently similar. Indeed, the Second District below found that the prosecutor’s remarks were “remarkably similar to the improper remarks in Varona.” Marston, 79 So.3d at 74. For example, the prosecutor below told the jury, “I can’t put him on the stand,” id. at 73, while the prosecutor in Varona said, “I can’t call him as a witness for any reason,” 674 So.2d at 824. Moreover, as in the instant case, the prosecutor in Varona first broached the issue of the defendant’s right to remain silent,[6] the trial judge overruled the defendant’s objection to the prosecutor’s comments and failed to give a curative instruction, and the defendant did not testify in his own behalf. Varona, 674 So.2d at 824-25; Marston, 79 So.3d at 73-75. Additionally, *574 the prosecution’s evidence offered against Varona and Marston was strong and the victims did not make in-court identifications of their assailants. Varona, 674 So.2d at 825; Marston, 79 So.3d at 74. In applying the harmless error analysis, the Fourth District’s decision in Varona found that the State did not meet its burden of proving that the error was harmless beyond a reasonable doubt, 674 So.2d at 826, whereas the Second District’s decision in Marston found “no reasonable possibility that the failure to give a curative instruction affected the verdict,” 79 So.3d at 74. We therefore find that the Second District’s decision in Marston expressly and directly conflicts with the Fourth District’s decision in Varona on harmless error analysis.
CONCLUSION
Based on the foregoing, we quash the Second District’s decision in Marston and approve the Fourth District’s decision in Varona.
It is so ordered.
PARIENTE, LABARGA, and PERRY, JJ., concur.
LEWIS, J., dissents.
CANADY, J., dissents with an opinion in which POLSTON, C.J., concurs.

. Marston moved for a judgment of acquittal as to all of the charges. The trial court granted Marstonls motion as to the robbery count, which the trial court substituted into an attempted robbery charge, and denied the motion as to the other charges.

. The trial court also found Marston to be a sexual predator.

. In David v. State, 369 So.2d 943, 944 (Fla.1979), we adopted the "fairly susceptible” test.

. In Andrews, we concluded that the trial court’s comment on the defendant’s right not to testify, which was not requested by the defendant and did not include a cautionary instruction, was reversible error. Id. at 85.

. We decline to address Marston’s claim that the trial court erred in denying his motion to suppress.

. “Unlike Varona, this is not a case where the prosecutor first broached the issue of the defendant’s right to remain silent during voir dire....” Grieve v. State, 731 So.2d 84 (Fla. 4th DCA 1999).