# Supreme Court of Florida

---

No. SC20-1282

---

**JOSHUA DAVIS,**
Petitioner,

vs.

**STATE OF FLORIDA,**
Respondent.

September 8, 2022

COURIEL, J.

We have for review the decision in *Davis v. State*, 311 So. 3d 927 (Fla. 2d DCA 2020), in which the Second District Court of Appeal certified the following question of great public importance:

> WHEN A DEFENDANT IN A CRIMINAL CASE ASSERTS IN AN APPEAL FROM A JUDGMENT AND SENTENCE THAT THE TRIAL COURT ERRONEOUSLY DENIED A LEGALLY SUFFICIENT MOTION TO DISQUALIFY THE TRIAL JUDGE FOR ALLEGED BIAS OR PREJUDICE UNDER SECTION 38.10, FLORIDA STATUTES (2015), AND FLORIDA RULE OF JUDICIAL ADMINISTRATION 2.330(D)(1), SHOULD AN APPELLATE COURT REVIEW THE ERRONEOUS DENIAL FOR HARMLESS ERROR AND, IF SO, WHAT HARMLESS ERROR TEST SHOULD THE APPELLATE COURT APPLY?

We have jurisdiction. Art. V, § 3(b)(4), Fla. Const. The answer to the certified question is yes. We find that the Second District was correct to apply the harmless error standard. However, the proper test is that set forth in *State v. DiGuilio*, 491 So. 2d 1129, 1135 (Fla. 1986). And applying that test here, we find that harmful error occurred, so we quash the decision of the Second District to the extent that it concludes otherwise, and remand for further proceedings consistent with this decision.

**I**

On April 24, 2012, Joshua Davis shot three coworkers who were visiting his home, killing two and severely wounding the third. At his trial, the State introduced no evidence regarding a motive for the shootings. Rather, "[t]he State's theory was that Mr. Davis intentionally shot the three men while under the influence of marijuana," which he had smoked with two of them. *Davis*, 311 So. 3d at 931-32. "[A]ccording to one of the State's experts, [Davis was] in a state of psychosis from having used the drug." *Id.* Davis's seven-year-old daughter was at home and witnessed the shootings. A grand jury indicted Davis on two counts of first-degree murder,

one count of attempted first-degree murder, and one count of child abuse on May 10, 2012.

The case was originally scheduled for trial in May 2015 before Judge Donald Jacobsen, who in the intervening years ruled on several pretrial matters. The trial was continued and, eventually, Judge Jacobsen announced that he expected to leave the capital felony division. His replacement would be Judge Jalal Harb.

Davis moved for Judge Jacobsen to remain on the case because, aside from Judge Jacobsen's knowledge of the facts and his having ruled on many pretrial motions, Judge Harb had been a prosecutor in the homicide division of the state attorney's office from August 2012 to March 2014, while Davis's case was pending. The State opposed and moved to strike Davis's motion, arguing that Judge Harb had no involvement in the prosecution of Davis's case, and that his having worked in the same division did not, without more, support the inference that he was biased.

Judge Jacobsen presided at a hearing on these matters. Judge Harb attended as an observer. The prosecutor argued that Judge Harb could easily come up to speed on the case and

explained the following about Judge Harb's work at the state attorney's office:

> Judge, I would like to put on the record that I did, when I received the defense motion, pull this file, as well as any homicide committee notes that took place while Judge Harb was in our division. I pulled this file and every attorney note that's in this case. Judge Harb's not touched this file. He never attended a homicide committee meeting regarding this case. Other than the fact that this was pending in the division when he was an attorney in that division, he's had no contact with this file.

*Davis*, 311 So. 3d at 931. Judge Jacobsen denied Davis's motion but clarified that this did not prejudice Davis's right to file a motion to disqualify Judge Harb.

And indeed, when Judge Harb took over the capital felony division in July 2015, Davis moved to disqualify him under section 38.10 of the Florida Statutes and Florida Rule of Judicial Administration 2.330(e)(1). In his supporting affidavit, Davis listed four reasons he feared he would not receive a fair trial:

(1) Judge Harb was an assistant state attorney in the homicide division while this case was pending and worked alongside the prosecutor in that division handling his case,

(2) [T]he homicide division functioned as a single unit with decisions being made not by individual prosecutors but rather by committee as a unified division,

- 4 -

(3) [T]he State's argument in opposition to his motion for Judge Jacobsen to remain on the case was both strenuous and based on factual research about Judge Harb that the judge could not consider in ruling on a motion to disqualify, and

(4) Judge Harb was present at the hearing on the motion for Judge Jacobsen to remain on the case.

*Davis*, 311 So. 3d at 931. Judge Harb denied the motion as legally insufficient. Davis did not file a petition for a writ of prohibition seeking relief from that decision.

The case was tried in October 2016. The State's theory was that Davis's use of marijuana left him in a state of psychosis, but that he nonetheless intentionally shot the three victims. Davis did not deny that he smoked marijuana, nor did he contest that he shot the three men in the presence of his daughter. Instead, Davis argued that the shootings were justified, as his friends were acting strangely after reentering his house. Davis also presented an alternative defense of insanity based on expert testimony that he suffered from mental infirmity, which manifested itself in paranoid beliefs and behavior. The State countered this theory with expert testimony on drug-related paranoia.

The jury found Davis guilty of two counts of the lesser included offense of second-degree murder—one for each of the two victims who were killed—guilty of attempted first-degree murder with respect to the victim who survived, and guilty of child abuse.

Davis moved for a new trial, arguing, among other things, that Judge Harb "showed bias in his rulings toward" the State. Davis also identified a specific ruling of Judge Jacobsen's that Judge Harb reversed: Davis initially sought to conduct individual voir dire with jury panelists about the defense of insanity; whereas Judge Jacobsen had granted this request in a pretrial ruling, Judge Harb ruled that such inquiry would be allowed only if an individual juror asked to speak privately about the matter. Judge Harb denied the motion for a new trial. The court sentenced Davis to three concurrent life sentences for the murder counts, each with a twenty-five-year minimum mandatory sentence based on the use of a firearm, and a concurrent five-year sentence for child abuse.

On appeal, Davis challenged each of his three convictions, arguing primarily that "his judgment and sentences should be reversed and the case remanded for a new trial because Judge Harb wrongly denied his motion for disqualification." *Davis*, 311 So. 3d

at 932.  Davis "abandoned any appellate issue concerning the denial of the motion for new trial in which the allegation of actual bias was made."  *Id.*  The question before the Second District was whether "the allegations of the disqualification motion Judge Harb denied were legally sufficient to show a reasonable fear that [Davis] would not receive a fair trial and thus . . . require that Judge Harb step off the case."  *Id.*

The Second District found that Davis's motion was legally sufficient and should have been granted.  *Id.* at 933.  Relying on our decision in *Reed v. State*, 259 So. 3d 718 (Fla. 2018), which also sought disqualification of a trial judge who had previously been a prosecutor in a capital case unit,[1] the district court explained:

---

[1]  There, as here, the judge had not been the prosecutor assigned to the defendant's case, but members of the capital unit "had input in the decision making in each other's cases."  *Reed*, 259 So. 3d at 721 (quoting defendant's motion to disqualify).  The record here contains something absent from *Reed*: a prosecutor's representation that her search of the files revealed no evidence that the presiding judge did in fact have any input into the defendant's case.  However, to rule on a motion to disqualify, a trial court need only determine the legal sufficiency of the motion and shall not pass on the truth of the facts alleged.  *Cave v. State*, 660 So. 2d 705, 707-08 (Fla. 1995).  The prosecutor's representation goes to whether or not the trial judge in fact influenced the defendant's case, but the defendant need not have put that specific fact into issue to state a legally sufficient basis for disqualification.

First, Mr. Davis's motion alleges that the State strongly argued against Judge Jacobsen's staying on the case and in favor of Judge Harb's taking it. Second, Judge Harb was present at the hearing during which these arguments were made. And third, the State, in the presence of Judge Harb, disclosed the results of its factual investigation into whether Judge Harb had contact with the case while at the State Attorney's Office. The State's conduct thus (1) implied that it believed Judge Harb was inclined to make rulings that were favorable to the State and (2) resulted in Judge Harb having learned factual information that the law unambiguously forbade him from considering in deciding the question of disqualification, when the State knew full well that a disqualification motion would be coming if the case was assigned to him.

*Davis*, 311 So. 3d at 934. In making these findings, the Second District stressed that it did not hold that Judge Harb was in fact biased. *Id.* But, the district court explained, the State's eagerness, taken together with the allegations of Judge Harb's employment at the state attorney's office, were sufficient to give Davis a reasonable fear that he would not receive a fair trial. *Id.*

Next, the Second District addressed whether Judge Harb's failure to grant Davis's motion for disqualification required reversal of Davis's judgment and sentences. The district court noted that every defendant "has a constitutional right to a fair trial free of harmful error," and that Florida courts protect that right by

- 8 -

applying the harmless error test laid out in *DiGuilio*. *Id.* at 937 (emphasis removed) (quoting *Johnson v. State*, 53 So. 3d 1003, 1007 (Fla. 2010)). The Second District reasoned that *DiGuilio*'s harmless error test—which "requires the State to show 'beyond a reasonable doubt that the error complained of did not contribute to the verdict' "—was an "awkward fit," and unproductive to use when the error was not tied to the jury's factfinding mission. *Id.* at 937-38 (citing *DiGuilio*, 491 So. 2d at 1135). The district court concluded that the erroneous denial of a legally sufficient disqualification motion should be reviewed for harmless error, "with the question being whether there is a reasonable possibility that the error denied the defendant a fair trial before a neutral judge." *Id.* at 930.

Applying this standard to Davis, the Second District held that there was no reasonable possibility that Davis was denied his right to a fair trial by a neutral judge. *Id.* at 943. It listed "[t]hree facets of this case" which, when taken together, "convince[d] [it] that there [was] no such reasonable possibility": (1) Davis's failure to seek a writ of prohibition before trial suggested that he did not think he would fail to receive a fair trial, (2) the record of Judge Harb's

rulings—some of which were favorable to the State, and some favorable to Davis—suggested the trial was fair, and (3) the circumstances alleged in Davis's motion for disqualification did not in reality pose a substantial risk that Davis would be denied a fair trial. *Id.* at 943-45. The Second District then certified the question of great public importance that we now answer.

## II

The Second District determined that Davis's motion for disqualification was legally sufficient. We agree. The standard of review for a trial judge's decision on a motion to disqualify is *de novo*. *Gore v. State*, 964 So. 2d 1257, 1268 (Fla. 2007).

"A motion to disqualify is governed substantively by section 38.10, Florida Statutes (2005), and procedurally by Florida Rule of Judicial Administration 2.330." *Id.*[2] Section 38.10 provides in part:

---

2. In 2021, we renamed the Florida Rules of Judicial Administration, which are now the "Florida Rules of General Practice and Judicial Administration." *In re Amends. to Fla. Rules of Jud. Admin.—2020 Regular-Cycle Report*, 310 So. 3d 374, 375–76 (Fla. 2021). We apply rule 2.330 as it existed at the time of the events at issue in this case.

> Whenever a party to any action or proceeding makes and files an affidavit stating fear that he or she will not receive a fair trial in the court where the suit is pending on account of the prejudice of the judge of that court against the applicant or in favor of the adverse party, the judge shall proceed no further, but another judge shall be designated in the manner prescribed by the laws of this state for the substitution of judges for the trial of causes in which the presiding judge is disqualified. Every such affidavit shall state the facts and the reasons for the belief that any such bias or prejudice exists and shall be accompanied by a certificate of counsel of record that such affidavit and application are made in good faith.

§ 38.10, Fla. Stat. (2015).

Rule 2.330 requires that a motion to disqualify "allege specifically the facts and reasons upon which the movant relies as the grounds for disqualification," Fla. R. Jud. Admin. 2.330(c)(2) (2008), including, but not limited to, a showing that "the party fears that he or she will not receive a fair trial or hearing because of specifically described prejudice or bias of the judge." Fla. R. Jud. Admin. 2.330(d)(1) (2008).

The rule further provides that a judge against whom an initial motion to disqualify under subsection (e) is raised "determine only the legal sufficiency of the motion and shall not pass on the truth of the facts alleged." Fla. R. Jud. Admin. 2.330(f) (2008); *see also Cave*, 660 So. 2d at 707-08 (explaining that in reviewing a motion

to disqualify, "the judge shall determine only the legal sufficiency of the motion and shall not pass on the truth of the facts alleged"). If a judge determines that a motion is legally sufficient, he or she must enter an order granting disqualification and proceed no further. *Cave*, 660 So. 2d at 708.

When a court rules on the legal sufficiency of a motion for disqualification, it must consider "whether the facts alleged would place a reasonably prudent person in fear of not receiving a fair and impartial trial." *Livingston v. State*, 441 So. 2d 1083, 1087 (Fla. 1983). Rather than questioning a judge's perception of his or her "ability to act fairly and impartially," a motion for disqualification "focuses on those matters from which a litigant may reasonably question a judge's impartiality." *Id.* at 1086. Even if a judge, therefore, is confident that he or she can preside with no bias, the judge must grant a motion to disqualify if a reasonably prudent person could question his or her impartiality.

Davis's motion met this threshold. It rested on the State's strong preference for Judge Harb's continued participation in the case, notwithstanding his service in the unit responsible for its prosecution. Davis also argued that Judge Harb's presence at the

- 12 -

status conference allowed him to learn "factual information that the law unambiguously forbade him from considering in deciding the question of disqualification, when the State knew full well that a disqualification motion would be coming if the case was assigned to him." *Davis*, 311 So. 3d at 934. As the Second District explained, the allegations were "sufficient to have given Mr. Davis—who was present while all of this unfolded—a reasonable fear that he would not receive a fair trial." *Id.* at 934-35. To deny his motion, therefore, was error.

## III

We also agree with the Second District's conclusion that the erroneous denial of a legally sufficient motion for disqualification based on alleged bias or prejudice is not reversible error per se.

## A

When an error is properly preserved for appellate review by a timely objection at trial, the reviewing court applies either a harmless error test or a per se reversible error rule. *Johnson*, 53 So. 3d at 1007. To say that certain errors are per se reversible is to say that they "are so basic to a fair trial that their infraction can never be treated as harmless error." *DiGuilio*, 491 So. 2d at 1135

- 13 -

(quoting *Chapman v. California*, 386 U.S. 18, 23 (1967)). "In other words, [they are] those errors which are *always* harmful." *Id.* For example, we have held that a bailiff's ex parte communication with the jury on a substantive matter, even at the direction of the trial court, constitutes per se reversible error. *State v. Merricks*, 831 So. 2d 156, 160-61 (Fla. 2002); *see also Ivory v. State*, 351 So. 2d 26, 28 (Fla. 1977) (finding it per se prejudicial error for a trial judge to respond to a jury request for additional instructions, after the jury has already retired to consider their verdict, without the prosecuting attorney, the defendant, and defendant's counsel being present to voice objections). The classes of error we treat as so categorically harmful as to always require reversal, however, are few. That is because section 924.33 of our statutes generally prohibits us from "presum[ing] that error injuriously affected the substantial rights of the appellant." § 924.33, Fla. Stat. (2021); *see Palmes v. State*, 397 So. 2d 648, 653 (Fla. 1981) ("That the trial court's ruling was in error does not necessarily require reversal of the judgment. A judgment will not be reversed unless the error was prejudicial to the substantial rights of the appellant. This long standing decisional rule has also been enacted as [section 924.33]."

- 14 -

(citations omitted)). Therefore, we default to the harmless error test and reserve a per se rule "only for those errors that always vitiate the right to a fair trial and therefore are always harmful." *State v. Schopp*, 653 So. 2d 1016, 1020 (Fla. 1995).

The harmless error test focuses on the effect of the error on the trier of fact and "places the burden on the state, as the beneficiary of the error, to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict or, alternatively stated, that there is no reasonable possibility that the error contributed to the conviction." *DiGuilio*, 491 So. 2d at 1135. "If the appellate court cannot say beyond a reasonable doubt that the error did not affect the verdict," then the error is considered harmful. *Id.* at 1139.

Comments on a defendant's silence are one class of errors subject to the harmless error analysis. *DiGuilio*, 491 So. 2d at 1137; *see also Marston v. State*, 136 So. 3d 563, 570-72 (Fla. 2014) (finding harmful error where a prosecutor "commented continuously" on the defendant's Fifth Amendment rights during voir dire, because the "extensive remarks" impermissibly "demeaned [the defendant's] constitutional right to remain silent" and "invited

the jury to infer guilt from [the defendant's] decision not to take the stand"); *but see Burns v. State*, 699 So. 2d 646, 652 (Fla. 1997) (classifying the trial court's failure to give a cautionary instruction on the defendant's silence at the penalty phase as a harmless error, since the defendant was found guilty by a properly instructed guilt-phase jury, the newly impaneled penalty-phase jury voted unanimously for death, the trial court found three aggravating circumstances, and the facts of the killing were egregious).

Improperly admitted evidence is another. *See Czubak v. State*, 570 So. 2d 925, 928 (Fla. 1990) (finding harmful error where evidence of collateral crimes committed by the defendant—in the form of testimony that defendant was an escaped convict—was introduced, since the testimony had no relevance to any material fact in issue and the case against the defendant was largely circumstantial); *but see Castro v. State*, 547 So. 2d 111, 115 (Fla. 1989) (deeming a trial court's error in allowing a witness to testify about the defendant's previous collateral act harmless, because it did not influence the most incriminating evidence against the defendant, which was "his own confession").

"[B]oth per se reversible error and harmful error analysis apply only if," as was the case here, "the issue is properly preserved for appellate review." *Johnson*, 53 So. 3d at 1007.

**B**

In light of all this, we consider the properly preserved error alleged in this case and conclude that it is subject to harmless error analysis. As we shall explain, this conclusion does not alter the error's seriousness, or indeed the potential seriousness of any error subject to such review. Nonetheless, it is the conclusion commanded by the plain language of section 924.33, Florida Statutes (2021),[3] "which provides that harmless error analysis is applicable to all judgments." *Schopp*, 653 So. 2d at 1020.

Per se errors generally fall into two categories. First, when "application of the [harmless error] test to the type of error involved will always result in a finding that the error is harmful, then it is proper to categorize the error as per se reversible." *DiGuilio*, 491 So.

---

3. "No judgment shall be reversed unless the appellate court is of the opinion, after an examination of all the appeal papers, that error was committed that injuriously affected the substantial rights of the appellant. It shall not be presumed that error injuriously affected the substantial rights of the appellant." § 924.33, Fla. Stat. (2021).

2d at 1135. ("The test of whether a given *type* of error can be properly categorized as per se reversible error is the harmless error test itself."). Second, "[t]his Court has also applied the per se reversible error rule to those cases where the appellate court is unable to conduct a harmless error analysis because it would have to engage in pure speculation in order to attempt to determine the potential effect of the error on the jury." *Johnson*, 53 So. 3d at 1007.

The erroneous denial of a motion for disqualification does not belong in the first category. That is because our rule for motions for disqualification is prophylactic: some motions will inevitably be granted where a judge is not in fact biased—and thus the feared harm would not have been realized. *See, e.g., Cave*, 660 So. 2d at 708 (holding that the trial court erred by conducting a full evidentiary hearing on a motion for disqualification and adjudicating the issue on the merits, because the rules provide that when presented with a motion for disqualification, a judge "shall determine only the legal sufficiency of the motion and shall not pass on the truth of the facts alleged," and "shall immediately disqualify himself if the motion is legally sufficient"). A motion for

disqualification may list any number of baseless or untrue allegations and nonetheless be legally sufficient. In that case, although a judge must grant the legally sufficient motion, the erroneous denial of the motion and the judge's subsequent participation in the case would not always create a "reasonable possibility that the error contributed to the conviction." *DiGuilio*, 491 So. 2d at 1135.

Regarding the second category of per se errors, we find that the alleged error in this case does not require us "to engage in pure speculation in order to attempt to determine the potential effect of the error on the jury." *Johnson*, 53 So. 3d at 1007. We have previously found per se reversible error to occur when the absence of, defect in, or jury's limited access to a trial record requires us to speculate in order to determine the error's effect.

In *Johnson, id.* at 1006, we found that "when a judge erroneously instructs a jury that it may not request to have testimony read back . . . it is impossible to determine the effect of the erroneous instruction on the jury" because we cannot guess with any accuracy when the jury would have made such a request. *Id.* at 1009 ("A court attempting to conduct a harmless error

- 19 -

analysis cannot know what testimony a jury would have requested to have read back or even whether a jury would have asked for a read-back at all. Therefore, a reviewing court cannot determine whether a jury was confused or needed clarification about the facts of the case, and it is impossible to discern whether the defendant was prejudiced by the error."). And we have recognized that "[a]ny communication with the jury outside the presence of the prosecutor, the defendant, and defendant's counsel is so fraught with potential prejudice that it cannot be considered harmless." *Ivory*, 351 So. 2d at 28.

And we have held that it is per se error "for a trial judge to respond to a request from the jury without the prosecuting attorney, the defendant, and defendant's counsel being present and having the opportunity to participate in the discussion of the action to be taken on the jury's request," as the absence of any such party would almost certainly affect the record. *Id.* We have likewise found unsupervised communications between a bailiff and a jury to be per se reversible. *Merricks*, 831 So. 2d at 161.

Similarly, when a judge responds to a jury request covered under rule 3.410 outside the presence of counsel, the State and

- 20 -

defendant are absent, and therefore unable to participate in the exchange with the jury. Without this participation process, "it is impossible to determine whether prejudice has occurred" because the reviewing court must speculate as to what objections and arguments each party might have made. *Bradley v. State*, 513 So. 2d 112, 113-14 (Fla. 1987) (citing *Curtis v. State*, 480 So. 2d 1277, 1279 (Fla. 1985)); *see also Colbert v. State*, 569 So. 2d 433, 435 (Fla. 1990) (listing cases and examining the history of the per se reversible error rule in the rule 3.410 context).

Finally, when a bailiff engages in unsupervised conversations with a jury, harmless error analysis is inappropriate because it "would 'unnecessarily embroil trial counsel, trial judges and appellate courts in a search for evanescent "harm," real or fancied.' " *Merricks*, 831 So. 2d at 161 (quoting *Ivory v. State*, 351 So. 2d 26, 28 (Fla. 1977) (England, J., concurring)). There is no record to consult.

Here, however, there is. Unlike these cases, in this one, the result of the alleged error is the trial record as we have it. From this record, we may reasonably determine the effect of the alleged error—Judge Harb's erroneous denial of the motion for

disqualification, and his subsequent participation in the case—on

Davis's conviction.

Since we can indeed conduct a thorough harmless error

analysis to determine whether there is a reasonable possibility that

the erroneous denial influenced the jury's decision, a per se rule is

unwarranted.[4]  *See Colbert,* 569 So. 2d at 435 (applying the

---

4.  Some of our prior decisions have assumed, without really reasoning to the conclusion, that the erroneous denial of a motion to disqualify is per se reversible error.  *See Livingston,* 441 So. 2d at 1087 ("We have concluded that Livingston's verified motion and supporting documents were sufficient under Florida Rule of Criminal Procedure 3.230 to require the trial judge to disqualify himself.  We must vacate the judgment and sentence and remand with directions to proceed with a new trial."); *Cave,* 660 So. 2d at 708 ("[W]e find that Judge Walsh's conduct failed to follow the procedural process outlined in rule 2.160 and his error requires us to vacate Cave's sentence.");  *Fuster-Escalona v. Wisotsky,* 781 So. 2d 1063, 1065-66 (Fla. 2000) ("When a trial court fails to act in accord with the statute and procedural rule on a motion to disqualify, an appellate court will vacate a trial court judgment that flows from that error."); *Thompson v. State,* 990 So. 2d 482, 489 (Fla. 2008) ("When a trial court fails to act in accord with the law governing motions to disqualify, an appellate court will vacate a trial court judgment that flows from the error." (citing *Fuster–Escalona,* 781 So. 2d at 1065)).  But the decision below is correct that these cases do not require us to adhere to a per se rule. In *Livingston,* we did not reject the harmless error rule, but rather, a rule that would have put the burden on the defendant to show that the trial court was biased in fact.  And in *Fuster-Escalona,* which we cited in *Thompson,* the language that Davis invokes did not resolve

harmless error analysis where "[t]he prospective jury instructions were extensively discussed with counsel," "[d]efense counsel fully argued the position that a mistrial on all counts was warranted and objected on the record," and "defense counsel properly preserved the issue by objecting on the record").[5]

We therefore agree with the Second District Court of Appeal's conclusion that harmless error remains the proper analysis for erroneous denials of a legally sufficient motion for disqualification.

_____

the dispute before the Court.  *See Davis*, 311 So. 3d at 942-43 (addressing these cases and declining to follow them).

5.  Nor, as Davis implies, do "due process concerns" require that we employ a per se reversal rule.  Davis cites *Steinhorst v. State* for the proposition that "one of the most important dictates of due process" is that "proceedings involving criminal charges, and especially the death penalty, must both be and appear to be fundamentally fair."  636 So. 2d 498, 501 (Fla. 1994).  That is certainly correct.  Yet we have repeatedly found application of the *DiGuilio* harmless error standard to comport with due process, and to sufficiently safeguard the appearance and fact of fundamental fairness in evaluating the constitutional impact of trial errors, including in capital cases.  *See, e.g.*, *Burns*, 699 So. 2d at 652 (applying the harmless error standard where a trial court erred in refusing to give a requested jury instruction, finding that the trial court's "failure to give the requested instruction was harmless beyond a reasonable doubt," and affirming the defendant's sentence of death).

## C

We have repeatedly rejected attempts to depart from the harmless error test articulated in *DiGuilio*. *State v. Lee*, 531 So. 2d 133, 134 (Fla. 1988); *Goodwin v. State*, 751 So. 2d 537, 546 (Fla. 1999); *Knowles v. State*, 848 So. 2d 1055 (Fla. 2003); *Williams v. State*, 863 So. 2d 1189, 1190 (Fla. 2003). We do so again today. *DiGuilio* asks "whether there is a reasonable possibility that the error affected the verdict." 491 So. 2d at 1139. Here, we can answer that question by looking to a defendant's motion for disqualification, the circumstances surrounding that motion, records at pretrial hearings, and records at the trial itself. Indeed, we do so in the next section.

## IV

Applying the test laid out in *DiGuilio*, we cannot say that "there is no reasonable possibility that the error contributed to the conviction." 491 So. 2d at 1135. While presiding over this case, Judge Harb made several consequential decisions that could have altered the outcome of the trial. Most notably, Davis's alternative theory of defense at trial was that he suffered a preexisting mental disease or infirmity. As argued by Davis, this preexisting condition

- 24 -

triggered the psychotic episode that led to the shootings—not, as argued by the State, his alleged use of marijuana.

Prior to Judge Harb's involvement, the defense moved for individual sequestered voir dire on the insanity defense, among other topics. The defense argued that the insanity defense was "often viewed negatively by jurors," therefore an "open discussion of a negative view of this topic could taint the entire juror panel." Judge Jacobsen granted the motion in part on May 18, 2015, allowing individual sequestered voir dire on "predilections concerning the use of a mental health-related defense."

However, during jury selection, Judge Harb overrode Judge Jacobsen's order and ruled instead: "I will allow the State to ask questions regarding mental health." The defense objected, and Judge Harb clarified that either the State or defense could request to individually voir dire a juror "while the State is asking questions," but the parties "will be allowed to delve into [questions about mental health]."

Sequestered voir dire on the insanity defense, as granted by Judge Jacobsen and rescinded by Judge Harb, might very well have had a profound effect not only on the composition of Davis's jury,

but on the selected jurors' perception of the insanity defense going into trial. Bearing this in mind, we find that there is a reasonable possibility that Judge Harb's failure to grant the motion to disqualify, and in turn his influence on voir dire and the jury selection process, contributed to Davis's conviction.[6]

## V

We answer the certified question in the affirmative. We approve in part, finding that the Second District was correct to apply the harmless error standard. However, the proper test for harmless error is that set forth in *State v. DiGuilio*, 491 So. 2d 1129, 1135 (Fla. 1986). Under that standard, we conclude harmful error occurred. We quash the decision of the Second District to the extent that it concludes that there was no harmful error in this case, and remand for a new trial.

---

6. We need not and do not find that any of Judge Harb's trial rulings were erroneous. None of them are before us. All we must consider is whether the error alleged by Davis—the denial of his legally sufficient motion for disqualification—had a reasonable probability of contributing to his conviction. Right or wrong, the rulings we have discussed here meet that threshold.

It is so ordered.

MUÑIZ, C.J., and CANADY and GROSSHANS, JJ., concur.
POLSTON, J., concurs in result and dissents in part with an opinion, in which LABARGA, J., concurs.
LABARGA, J., concurs in result and dissents in part with an opinion, in which POLSTON, J., concurs.
FRANCIS, J., did not participate.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

POLSTON, J., concurring in result and dissenting in part.

I agree that the motion to disqualify the trial judge should have been granted, and I also agree with the majority to the extent that it quashes in part the decision below and remands for a new trial. However, I dissent to the majority's use of the harmless error standard because this cannot be reconciled with our established precedent treating the erroneous denial of a motion to disqualify the trial judge as per se reversible.

In *Livingston v. State*, 441 So. 2d 1083, 1084 (Fla. 1983), on direct appeal from a first-degree murder conviction and death sentence, the defendant raised the issue of the erroneous denial of his motion to disqualify the trial judge based on alleged bias or prejudice. *Id.* The defendant's motion to disqualify cited specific incidents of animosity between defense counsel and the trial judge.

- 27 -

*Id.* at 1084-85. This Court concluded that the defendant's motion was sufficient, and "the trial judge should have disqualified himself from presiding in [the defendant]'s trial." *Id.* at 1084, 1087. As a result, we vacated the judgment and sentence and remanded for a new trial. *Id.* at 1087.

In *Cave v. State*, 660 So. 2d 705 (Fla. 1995), after conducting a "full evidentiary hearing on the factual allegations contained in [the defendant]'s motion for disqualification of the judge," the trial judge denied the defendant's motion as legally insufficient. *Id.* at 707-08. On direct appeal of resentencing that resulted in a death sentence for the conviction of first-degree murder, the defendant argued that the erroneous denial of the defendant's motion for disqualification of the trial judge was reversible error. *Id.* at 707 n.2. This Court agreed, concluding that "[t]he hearing of evidence and the subsequent ruling on the evidence demonstrates that the judge passed on the truth of the facts alleged and adjudicated the question of his disqualification," and "his error requires us to vacate [the defendant]'s sentence" and remand for resentencing. *Id.* at 708.

Further, in *Thompson v. State*, 990 So. 2d 482, 485 (Fla. 2008), in addressing an express and direct conflict issue involving "the appropriate standard for determining prejudice with regard to an ineffective assistance of counsel claim based on counsel's failure to disqualify the presiding judge," this Court reiterated that "[w]hen a trial court fails to act in accord with the law governing motions to disqualify, *an appellate court will vacate a trial court judgment that flows from the error.*"  *Id.* at 489 (emphasis added).

The majority errs in concluding that the erroneous denial of a legally sufficient motion for disqualification is not per se reversible. As explained in the cases above, the Court has consistently applied a per se reversible standard consistent with the first category of the test set forth in *State v. DiGuilio*, 491 So. 2d 1129 (Fla. 1986). Rather than receding, the majority looks to inapplicable factual circumstances and case law to apply the harmless error standard. Majority op. at 13-17.  Recusal errors involving a judge who is alleged to be biased or prejudiced fit into the class of errors that vitiate the right to a fair trial.  *See State v. Schopp*, 653 So. 2d 1016, 1020 (Fla. 1995) ("[A] per se rule is appropriate only for those errors

- 29 -

that always vitiate the right to a fair trial and therefore are always harmful.").

It is important that a judge have no actual or appearance of bias or prejudice. *See Fuster-Escalona v. Wisotsky*, 781 So. 2d 1063, 1065 (Fla. 2000) ("[T]he neutrality of judges is a 'grave concern' even as to perception."). Public trust and confidence in our judicial system is crucial to the rule of law. *See In re Ford-Kaus*, 730 So. 2d 269, 277 (Fla. 1999) ("The judicial system can only function if the public is able to place its trust in judicial officers."). A judge who appears to be unfair, even if getting legal rulings correct, is damaging to the public trust and confidence and cannot be tolerated. *See Fuster-Escalona*, 781 So. 2d at 1066 ("Logically, any decision by a judge under a cloud of prejudice would be suspect, thus undermining the integrity of the court proceeding and any movement toward judgment."). Due process demands more. *See Steinhorst v. State*, 636 So. 2d 498, 501 (Fla. 1994) ("There is no other conclusion that is consistent with one of the most important dictates of due process: that proceedings involving criminal charges . . . must both be and appear to be fundamentally fair.").

Accordingly, consistent with this Court's precedent, I would conclude that the erroneous denial of Davis' disqualification motion is per se reversible, answer the certified question in the negative, quash the Second District Court of Appeal's decision below, and remand for a new trial.

LABARGA, J., concurs.

LABARGA, J., concurring in result and dissenting in part.

I agree with the majority that the motion to disqualify the trial court judge should have been granted. Thus, I agree with the majority to the extent that it quashes in part the decision below and remands for a new trial.

However, because I believe that the erroneous denial of a disqualification motion is per se reversible, I dissent to the majority's use of the harmless error standard of review.

POLSTON, J., concurs.

Application for Review of the Decision of the District Court of Appeal Certified Great Public Importance

Second District – Case No. 2D17-517

(Polk County)

Howard L. "Rex" Dimmig, II, Public Defender, Steven L. Bolotin and Rachel P. Roebuck, Assistant Public Defenders, Tenth Judicial Circuit, Bartow, Florida,

for Petitioner

Ashley Moody, Attorney General, Henry C. Whitaker, Solicitor General, Jeffrey Paul DeSousa, Chief Deputy Solicitor General, and David M. Costello, Assistant Solicitor General, Tallahassee, Florida, C. Suzanne Bechard, Chief Assistant Attorney General, and Laurie Benoit-Knox, Assistant Attorney General, Tampa, Florida,

for Respondent